# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL NO. 5:11CV002-RLV-DSC

| | |
|---|---|
| ALLAN R. ATWOOD,  )  <br>      Plaintiff,  )  <br>  )  <br>vs.  )  <br>  )  <br>MICHAEL J. ASTRUE,  )  <br>Commissioner of Social  )  <br>Security Administration,  )  <br>      Defendant.  )  <br>  ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #11) and "Memorandum in Support ..." (document #11-1), both filed August 4, 2011; and Defendant's "Motion for Summary Judgment" (document #12) and "Memorandum in Support... " (document #13) filed September 27, 2011. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

On December 26, 2006, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") (Tr. 94-98), alleging that he became disabled on May 26, 2006 due to problems with his right foot (Tr. 115). Plaintiff's application was denied initially and on reconsideration (Tr. 46-53). Plaintiff subsequently requested a hearing (Tr. 57-61) which was held

on July 14, 2009 (Tr. 17-37).

On August 20, 2009, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr.6-16). In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. The ALJ also found that Plaintiff suffered "posttraumatic changes of the right foot, status post-calcaneus fracture" (Tr. 11, at Finding 3), which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform the full range of sedentary work,[2] as defined in 20 C.F.R. § 404.1567(a), except that he must avoid hazardous conditions and not work at heights (Tr. 12, at Finding 5). Based upon this RFC, the ALJ found that Plaintiff could not perform his past relevant work as a transportation worker (Tr. 15, at Finding 6). The ALJ then considered Plaintiff's ability to perform other work existing in significant numbers in the national economy (Tr. 15-16). The ALJ relied upon the Medical-Vocational Guidelines (Grids) in finding that Plaintiff was capable of performing other work existing in significant numbers in the national economy and was not disabled within the meaning of the Social Security Act. (Tr. 16, at Finding 11).

On November 5, 2010, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), making the hearing decision the final decision of the Commissioner. 20 C.F.R. § 404.955.

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Plaintiff filed the present action on January 4, 2011, and assigns error to the ALJ's evaluation of her RFC, his evaluation of the opinion of her treating orthopedic surgeon, Dr. Robert D. Teasdall, and the ALJ's alleged failure to consider whether Plaintiff qualified for a closed period of disability benefits. See Plaintiff's "Memorandum in Support ..." at 2 (document #11-1). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical

3

evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled"at any time, as that term of art is defined for Social Security purposes.[3] Plaintiff first argues that the ALJ erred in formulating her RFC. The undersigned finds that, to the contrary, the RFC assessed by the ALJ is supported by substantial evidence.

At the hearing stage, the ALJ is solely responsible for determining Plaintiff's RFC, and must consider the functional limitations resulting from Plaintiff's medically determinable impairments. 20 C.F.R. § 404.1546(c); SSR 96-8p. Following Plaintiff's ankle injury in May 2006, he was discharged from the hospital with "excellent active range of motion in his toes," and "very good capillary refill" (Tr. 180). His swelling was treated moderately with ice and a splint (Tr. 180). On June 2, 2006, Plaintiff had an appointment with Dr. Courtney Whitman for his right ankle injury.

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

(Tr. 195). Plaintiff was "doing well" and the swelling in his foot had decreased (Tr. 195). His skin blisters had healed well, he was neurologically intact, his toe movement was normal, and his sensation was "grossly intact" (Tr. 195). On June 15, 2006, Plaintiff was referred to Dr. Teasdall for evaluation of his right ankle (Tr. 196-197). Dr. Teasdall initially recommended conservative treatment to include physical therapy, anti-inflammatory medication, and alternative shoe options (Tr. 197).

On August 18, 2006, Plaintiff was described as "doing well" with a decrease in swelling, and no wound break-down (Tr. 190). He was fitted for a leg cast and advised that he could begin weight-bearing (Tr. 190). On August 31, 2006, Dr. Whitman described Plaintiff as "doing well" with some pain upon weight bearing (Tr. 188). His swelling had decreased, he was neurovascularly intact, his skin was intact, and there was no skin break-down (Tr. 188). Plaintiff was advised that he could gradually increase his weight bearing as tolerated (Tr. 188).

On November 1, 2006, Plaintiff saw Dr. Whitman for a follow-up appointment (Tr. 184). Plaintiff's condition had "dramatically improved" and he was able to put some weight on his foot, though he was not able to bear his full weight (Tr. 184). He ambulated "fairly well" with the use of a walker and cane (Tr. 184). Upon examination, Plaintiff's swelling had decreased, and he was encouraged to continue working on his range of motion (Tr. 184).

On January 15, 2007, Dr. Whitman wrote a letter stating that it would be difficult for Plaintiff to negotiate uneven surfaces or walk on a pitched roof (Tr. 183). She noted that Plaintiff would be unable to return to his previous employment, and would require "significant limitations with regard to standing or walking" (Tr. 183).

Following Plaintiff's ankle fusion by Dr. Teasdall in March 2007, he followed up with Dr. Whitman (Tr. 328). Dr. Whitman noted that Plaintiff was ambulatory and weight bearing (Tr. 328).

Plaintiff continued to have pain and discomfort but his foot looked "excellent" (Tr. 328). He had "much less swelling" and did not possess "nearly the deformity that he had prior to his most recent surgery" (Tr. 328). Dr. Whitman was pleased and found that Plaintiff had made good progress (Tr. 328). Plaintiff had no subtalar motion, but his plantar flexion and dorsi flexion were improving (Tr. 328). His swelling had decreased dramatically and he was neurovascularly intact (Tr. 328). The impression was "excellent post- op progress" (Tr. 328). Plaintiff was advised to increase his activities and ambulation, and to start wearing comfortable footwear (Tr. 328). X-ray examination of Plaintiff's ankle showed good fusion with no loosening of the screws and excellent alignment (Tr. 319, 321).

In sum, Plaintiff's treatment notes demonstrate that he was ambulatory and retained the capacity to perform the limited standing and walking requirements associated with sedentary work. His injury improved with surgery and therapy (Tr. 184, 258, 309, 321, 328) and he did well in the course of treatment (Tr. 188, 195). A symptom that can be reasonably controlled by medication or treatment is not disabling. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir.1965)).

Plaintiff's activities of daily living also support the ALJ's RFC determination. Despite Plaintiff's ankle impairment, he remained capable of driving (Tr. 12, 25), helped out around the house by doing laundry or the dishes, and went to church and the store with his wife (Tr. 12, 25, 31). "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). On this point, the ALJ reasonably found that the evidence of Plaintiff's daily activities, which included driving, attending church, and doing light shopping, to be inconsistent with his allegations of complete inability to stand or walk for any period of time. See Gross, 785 F.2d at 1166.

The opinion evidence also supports the ALJ's RFC determination. Dr. David Stauffer reviewed Plaintiff's medical records and found him capable of walking in a compensatory manner, but unable to perform work involving standing or walking (Tr. 334). While sedentary work is defined as a job that primarily involves sitting, it does require limited walking or standing in the course of job performance. See 20 C.F.R.§ 404.1567(a). Dr. Stauffer's opinion that Plaintiff could walk, but should not perform a job involving walking or standing is consistent with the ALJ's RFC limitation to sedentary work.

Dr. Pyle, a state agency physician, reviewed the evidentiary record and determined that Plaintiff remained capable of medium work, defined as lifting fifty pounds occasionally, twenty-five pounds frequently, sit, stand, or walk for six hours in an eight hour workday, and push or pull without limitation. (Tr. 266). If an individual can perform medium work, he is also deemed capable of sedentary and light work. See 20 C.F.R. § 404.1567(c). The opinion of a state agency physician constitutes substantial evidence in support of an ALJ's decision. Here, it is consistent with the administrative record as a whole. Smith v. Schweicker, 795 F.2d 343, 345-346 (4th Cir. 1986); Gordon v. Schweicker, 725 F.2d 231, 235 (4th Cir. 1984).

Plaintiff contends that he is incapable of even the minimal walking and standing demands of sedentary work (Document #11. at 3-4). However, as discussed above, Plaintiff's activities of daily living, his improvement with treatment and surgery, and the opinions of Dr. Whitman (Tr. 183), Dr. Stauffer (Tr. 333-334), and Dr. Pyle (Tr. 266) all support the ALJ's determination that Plaintiff could perform sedentary work.

Plaintiff also argues that his use of an assistive device precluded his ability to perform sedentary work (Document #11-1 at 4-5). The ALJ found that Plaintiff could continually "walk a block at a reasonable pace, use standard public transportation, or carry out routine ambulatory

activities such as shopping or going to church" (Tr. 11-12). It is Plaintiff's burden to prove his RFC. 20 C.F.R. § 404.1512; Bowen v. Yuckert, 482 U.S. at 137, 146 (1987). Plaintiff has neither proven that he was required to use an assistive device, nor that such device affected his ability to perform the full range of sedentary work contemplated by the Grids. Accordingly, the ALJ's reliance upon the Grids was approrpiate. See SSR 96-9p (even an individual using a medically required hand-held assistive device can perform sedentary work, depending on the facts and circumstances of the case); Baker v. Comm'r. of Soc. Sec., No. 10-10335, 2010 WL 2511385, at *2 (11th Cir. June 23, 2010) (ALJ permissibly relied on sedentary Grid despite plaintiff's medically required use of a cane).

Plaintiff's next assigns error to the ALJ's evaluation of Dr. Teasdall's March 26, 2008 opinion expressed in a "To Whom It May Concern" letter that Plaintiff was "permanently disabled" (Tr. 306), and his April 8, 2008 opinion that Plaintiff could perform sedentary work only with his right foot elevated (Tr. 302). The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL

911720, at *2 (4th Cir. Dec. 31, 1998) (per curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

The ALJ did not ignore Dr. Teasdall's opinion, but rather declined to afford it controlling weight since it regarded an issued reserved to the Commissioner. (Tr. 13). See 20 C.F.R. § 404.1527(e). The ALJ also noted that Dr. Teasdall's opinion was motivated, in part, by his desire to help Plaintiff obtain disability benefits. (Tr. 14). Dr. Teasdall informed Plaintiff that he would write him a letter in support of his claim, and that his lawyer should call the office and "tell [him] what need[ed] to be said." (Tr. 14, 310). The ALJ found Dr. Teasdall's statement in this regard evidenced his motivation to help Plaintiff obtain disability benefits. (Tr. 14). Dr. Teasdall's opinion of total disability also conflicted with Plaintiff's activities of daily living and the state agency physician's RFC determination (Tr. 11-12, 266).

The record contains no support for Dr. Teasdall's opinion that Plaintiff needed his leg to be elevated on a regular basis (Tr. 14). Despite treating Plaintiff on numerous occasions, none of Dr. Teasdall's treatment notes, nor the treatment notes of any other physician of record, support a finding that Plaintiff needed to keep his leg in an elevated position on a regular basis (Tr. 14). Absent any support for this limitation, the ALJ was not required to adopt it or include it in his RFC determination. See SSR 96-2p (only treating opinions which are supported by the record will be afforded controlling weight).

Plaintiff argues that because the ALJ found Dr. Teasdall's opinion to be inconsistent with the evidentiary record as a whole, he was required to re-contact him (Tr. 13). Plaintiff recites the various instances under the Agency's regulations when it is necessary to re-contact a treating source. Those reasons are premised, however, on the ALJ finding that the evidence is inadequate to assess disability. 20 C.F.R. §§ 404.1512(e), 404.1527(c)(3). Even when some of the evidence is

inconsistent, as long as the evidence as a whole is sufficient for the ALJ to render a decision, the ALJ will weigh all of the evidence to determine whether a claimant is disabled based on all of the evidence. 20 C.F.R. § 404.1527(c)(2). Here, the record contained sufficient evidence for the ALJ to render his decision, and he was not required to re-contact Dr. Teasdall. 20 C.F.R. § 404.1512(e). There was no ambiguity, lack of evidence, or missing treatment notes. The ALJ evaluated the entire evidentiary record and found no support for Dr. Teasdall's opinon that Plaintiff was disabled, or that he could only perform sedentary work with his foot elevated. The ALJ was not required to re-contact Dr. Teasdall simply because he discounted his opinion in favor of substantial evidence to the contrary. See White v. Massanari, 271 F.3d 1256, 1261 (10th Cir. 2001) ("It is the inadequacy of the record, rather than the rejection of the treating physician's opinion, that triggers the duty to recontact that physician").

Plaintiff finally argues that the ALJ erred in failing to consider whether he was entitled to a closed period of disability (Document #11-1 at 2-3). On July 8, 2008, Dr. Stauffer stated that Plaintiff had been immobilized for two years following his accident. (Tr. 334). Plaintiff argues that he should have been found disabled for the two years that he was immobilized.

The evidentiary record does not support a finding that Plaintiff was immobilized for two years following his injury in May 2006. Upon discharge from the hospital in May 2006, Plaintiff was informed that he could begin weight bearing and ambulating with crutches (Tr. 180-181). In October 2006, Plaintiff was told that he could begin ambulating with a boot, and by November 2006, he was ambulating "fairly well" with the use of a walker or cane (Tr. 184). In May 2007, Dr. Pyle, a state agency physician, reviewed Plaintiff's claim and determined that he did not require a hand-held or assistive device to ambulate (Tr. 266). On July 10, 2007, Plaintiff was described as ambulatory, weight-bearing, and doing well (Tr. 328). In April 2008, Dr. Teasdall completed a questionnaire

regarding Plaintiff's ankle impairment and noted that Plaintiff was "ambulatory" and his condition was "stable" (Tr. 303). In sum, the record does not support a finding that Plaintiff was immobilized or that he was entitled to a closed period of disability benefits.

To the extent Plaintiff is claiming that the ALJ erred in failing to explicitly deny a closed period of disability, that argument also fails. The ALJ found that Plaintiff was not disabled at any time from his alleged onset date of May 26, 2006, through the date of his decision (Tr. 16). Implicit in this finding is the fact that Plaintiff was not entitled to a closed period of disability at any relevant time.

Although the medical records establish that the Plaintiff experienced symptoms and difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from his impairments, but was not disabled. Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records, Plaintiff's RFC and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #11) be **DENIED**; that Defendant's "Motion for Summary Judgment" (document #12) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED**.

Signed: September 28, 2011

David S. Cayer
United States Magistrate Judge